UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JESSICA KITTLE, on behalf of her minor child, J.M., and JESSICA KITTLE, individually, <br>　　　　Plaintiffs, <br><br>　　v. <br><br>DUNELAND SCHOOL CORP., and KEITH DAVISON, individually and as a Coach of Chesterton High School Wrestling, <br>　　　　Defendants. | CAUSE NO.: 2:21-CV-219-JEM |

**OPINION AND ORDER**

This matter is before the Court on Duneland School Corporation's Motion for Summary Judgment [DE 65], filed by Defendant Duneland on May 17, 2023, and Defendant Davison's Motion for Summary Judgment [DE 68], filed by Defendant Davison on May 19, 2023., . Plaintiffs filed their responses on July 21, 2023. Duneland filed a reply on August 1, 2023, and Davison filed a reply on August 4, 2023.

**I.    Background**

On July 12, 2021, Plaintiffs, a minor high school student ("J.M.") and her mother ("Kittle"), filed a nine count Complaint against Duneland School Corporation and one of its wrestling coaches, Keith Davison, alleging that the minor child was "smacked" in the face by the coach during a wrestling practice. Plaintiff alleges federal claims of obstruction of equal protection and due process clause of the 14th amendment right to a public education (count IX), and eight state law claims: battery (count I), assault (count II), criminal mischief (count III),

1

intentional infliction of emotional distress (count IV), negligence (count V), negligence per se (Count VI), statutory harassment and right to dignity violations (count VII), and loss of consortium (Count VIII).

Duneland seeks summary judgment on the sole federal law claim, count IX, on the basis that there are no genuine issues of material facts as to municipal liability for Davison's conduct. Davison seeks summary judgment on the sole federal law claim, count IX, on the basis that the official capacity claims are redundant of the claims against Duneland and Davison is entitled to qualified immunity. Defendants request that the matter then be remanded to state court as there will be no basis for federal jurisdiction.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party."

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.' (emphasis in original)" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

### III.	Material Facts

In December 2020, J.M. was a student at Chesterton High School and a member of the wrestling team. At a wrestling practice on December 28, 2020, the coach, Defendant Davison, slapped J.M. after telling her to "present her face." Immediately thereafter, Davison also slapped the face of a male wrestling team member with whom J.M. had been practicing.

J.M. testified that after the incident she felt unsafe at school and began having difficulty attending school. She saw a therapist for anxiety issues and began treatment with a psychiatrist for depression and severe anxiety with suicidal tendencies and thoughts. J.M. testified that prior to December 2020, wrestling had been her motivation to keep her grades up, and that when she left the wrestling team following the slap, she became depressed and lost her motivation. Members of J.M.'s IEP and case conference team were aware of J.M.'s anxiety and her IEP was modified after December 28, 2020. J.M.'s teacher testified that prior to the spring of 2021, J.M. was a hardworking student who cared about getting good grades and who was happy about being on the wrestling team, but that changed in the winter of 2021.

J.M. continues to suffer severe anxiety at the thought of Davison. She moved to an alternative school and had to attend summer school and participate in credit recovery. J.M. testified that she struggles with disassociating and focusing on her schoolwork.

Davison's coaching duties at Chesterton High School for the remainder of the 2020-2021 season were suspended, but he was allowed to coach and be involved with the Duneland Wrestling Club, which participated in activities at Chesterton High School. The principal of Chesterton High School knew that the Duneland Wrestling Club was involved in activities at Chesterton High

4

School, and that Davison continued to have access to the school after December 28, 2020.

Davison resigned his position as a volunteer unpaid wrestling coach for Chesterton High School on January 21, 2021. Davison has had no contact with J.M. at any time after the wrestling practice on December 28, 2020. No criminal charges were filed against Davison.

## IV. Analysis

Plaintiffs allege that Davison's conduct was "extreme, outrageous, and in no way within the scope of physical contact involved in the sport of wrestling." In their Complaint, Plaintiffs allege that to their knowledge no male student had been smacked and that J. M. was "treated this way because she is a female participating in a traditionally, and predominantly, male sport." However, the undisputed facts show that Davison also hit a male wrestling team member immediately after hitting J. M.

Duneland moves for judgment on Plaintiffs' federal claims. It argues that Plaintiffs have asserted no basis for municipal liability under the framework of *Monell*. Duneland also argues that Plaintiffs have not pleaded a cause of action asserting the Individual with Disabilities Act, but if they had, the IDEA requires that they exhaust their administrative remedies, and they have failed to do so. In their Complaint, Plaintiffs allege that their federally guaranteed equal access to educational opportunities rights for J.M. were denied by the assault. Although the Complaint sounds in sex discrimination, Plaintiffs argue in their response to Duneland's Motion for Summary Judgment that Duneland's handling of the assault constituted a denial of their Fourteenth Amendment rights as well as their rights under IDEA. Plaintiffs appear to have abandoned their claims of a Title IX violation in favor of claims of an IDEA violation.

Davison moves for judgment on Plaintiffs' federal claims. He argues both that the official

capacity claim is redundant of the claim against Duneland, and that he is entitled to qualified immunity on the individual capacity claims. Plaintiffs allege that the federally guaranteed equal access to educational opportunities for J.M. were denied by the assault and argue that Davison is not entitled to qualified immunity.

A. Federal Claims

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983, which serves as a procedural vehicle for lawsuits vindicating federal rights, in this case, claims that Defendants violated Plaintiffs' equal protection and due process rights. To state a § 1983 claim, a plaintiff must show that she was deprived of a right secured by the Constitution or federal law, by a person acting under color of law. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017); *Fitzgerald v. Barnstable Sch Comm.*, 555 U.S. 246, 254 (2009). In this case, a § 1983 claim requires proof by Plaintiffs that (1) Defendants were acting under color of state law when they engaged in the challenged conduct and (2) Defendants' conduct deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Ross v. Town of Austin, Ind.*, 343 F.3d 915, 917 (7th Cir. 2003).

i. Claim against Duneland

Duneland argues that Plaintiffs cannot succeed in their § 1983 claims against it. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S.

6

658, 694 (1978). Therefore, a cause of action against Duneland for a constitutional violation under § 1983 must allege:

> (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (quoting *Est. of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007)). In addition, Plaintiffs must show a causal connection between the disputed policy or practice and the injury. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012) ("The plaintiff must show . . . that the policy or custom was the 'moving force [behind] the constitutional violation.'") (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). "In cases asserting an implicit policy or a gap in express policy, 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Estate of Sims*, 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006) (other citations omitted)).

In the present case, Plaintiffs contend that their allegations satisfy *Monell* because the high school principal, Mr. Martinson, was a person with final policymaking authority who decided it "was unnecessary to bar Davison from the premises of Chesterton High School despite the fact that he admitted to slapping a fifteen-year-old female high school student." Pl. resp. br. p. 10 [DE 78]. Duneland argues that Martinson, as a high school principal, is not a final policymaker under Indiana law. Plaintiffs assert, without citation or analysis, that "Martinson's actions establish a policy as he was the Principal of Chesterton High School."

7

State law controls the question of who is a "final policymaker" for the purposes of § 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Under Indiana law, the board of school trustees is the final policymaker for a public school corporation. *Herndon v. South Bend Sch. Corp.*, No. 3:15 CV 587, 2016 U.S. Dist. LEXIS 88436, 2016 WL 3654501, at *1 (N.D. Ind. July 8, 2016 ("under Indiana law, it is the school board, and not the principal that has final policymaking authority"). *Monell* liability lies only when there is no higher authority than the decisionmaker so that his decision is final. *Gernetzke v. Kenosha Unified School District No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). The fact that a principal has broad discretion regarding educational and scholastic matters within his school does not equate to final policymaking authority. *See Oliver by Hines v. McClung*, 919 F. Supp. 1206, 1216 (N.D. Ind. 1995) ("notwithstanding the broad powers granted to school principals, those principals are not responsible for establishing final government policy"); *Derrick v. S. Bend Cmty. Sch. Corp.*, 2019 U.S. Dist. LEXIS 186774, at *21 (N.D. Ind. Oct. 29, 2019) (explaining that the fact that a high school basketball coach had "discretionary authority over the boys varsity basketball team does not mean that he was responsible for establishing *final* government policy") (emphasis in original).

The principal, the person Plaintiffs argue made the post-incident decision which resulted in Davison being barred from coaching Chesterton High School wrestling but not from coaching Duneland Wrestling Camp, is not a final policy maker under Indiana law, and Plaintiffs have not set forth any evidence or analysis to the contrary. They therefore cannot satisfy that prong of the *Monell* test.

Plaintiffs assert that the principal's action constitutes a policy but have not explained how the actions of someone without policymaking authority can institute a policy. They have offered

8

no alternative basis for *Monell* liability, and the Court cannot discern any other potential express policy or a widespread practice which would otherwise satisfy *Monell*.

Because Plaintiffs have not identified a final policy maker who violated any of their rights, the Court need not address whether their Fourteenth Amendment rights were actually violated by Duneland.

The Court notes that Plaintiffs raised the Individuals with Disabilities Act (20 U.S.C. § 1400 *et seq*.) in their response as a basis for liability, although their Complaint asserted only a Section 1983 deprivation of rights based solely on J.M.'s status as a female, not any disability she may have. Plaintiffs have not previously alleged any constitutional cause of action based on J.M.'s status as a disabled student, and their reference to it in their response to a motion for summary judgment does not act to amend their claims. *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) ("A party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment."). The shift from asserting a claim based on J.M.'s status as a female student treated differently than male students to one based on her status as a student with an IEP whose needs were not properly addressed is a significant shift and not properly raised in response to a motion for summary judgment. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co*., 900 F.3d 529, 541 (7th Cir. 2018) ("Although a plaintiff generally can alter the legal theories asserted in its complaint, it cannot alter 'the factual basis of [its] complaint at summary judgment.'"); *Chessie Logistics Co. v. Krinos Holdings, Inc.,* 867 F.3d 852, 860 (N.D. Ill. 2014) ("We see no abuse of discretion in the district court's decision to treat Chessie's new theory of negligence per so as forfeited because the new argument changed the complaint's factual theory in an important way."). Additionally, as

Duneland points out in its reply, IDEA requires that a party complaining about an IEP (the method of providing a free appropriate public education available under the IDEA) exhaust their administrative remedies through the process set forth in the IDEA. 20 U.S.C. § 1415(1). Accordingly, there are no federal claims remaining against Duneland.

    ii.    <u>Official Capacity Claim against Davison</u>

A suit against a public official in their official capacity is a suit against the entity of which that official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("An official capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *see also Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Therefore, Plaintiffs' federal claim against Davison in his official capacity is redundant. *Golston v. Genova*, No. 01 C 9713, 2003 U.S. Dist. LEXIS 4290 *16 (N.D. Ill. Mar. 19, 2003) (dismissing official capacity claims as redundant of claims against governmental entity). Plaintiffs concede that the claim is redundant but argue that dismissal is not the proper relief and the Court should instead assess the claims against Davison only in his individual capacity. Since Plaintiffs concede that the official capacity claim against Davison is redundant, summary judgment is proper on the federal claim in favor of Davison in his official capacity.

    iii.    <u>Individual Capacity Claim against Davison</u>

Davison argues that he is entitled to judgment as a matter of law on Plaintiffs' Equal Protection and Due Process claims because he is entitled to immunity.

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir. 1993); *see also Koger v. Bryan,* 523 F.3d 789, 802 (7th Cir. 2008). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 802 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Whether an official is entitled to qualified immunity is a three-part analysis. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, the Court must consider the threshold question of whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a constitutional right. *Id.* at 201 (citing *Seigert v. Gilley*, 500 U.S. 226, 232 (1991)). If no constitutional right was violated, there is no necessity for further inquiries. *Id*. Next, if the alleged conduct of the official did amount to a constitutional violation, the second inquiry is whether the "right was clearly established." *Id.* For the purposes of qualified immunity, a right is clearly established if "the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Third, even if a court finds that a right is clearly established, an official is nevertheless entitled to qualified immunity if the official made a reasonable mistake at to what the law required. *Id.* at 205. Finally, evidence of an official's allegedly malicious or improper motives is irrelevant to the qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) (citing *Harlow*, 457 U.S. at 817-18).

Davison argues that Plaintiffs have not established that their constitutional rights were violated or that the alleged right was not clearly established at the time of the alleged violation. Plaintiffs argue that Davison's conduct was intentional and therefore not a reasonable mistake and that he "clearly violated both statutory and constitutional rights that he should have known about

when he told a female high school student to present her face and proceeded to slap her." They argue that the slap shocks the conscience, but that even if it does not, the results of the slap do.

In order to be unconstitutional, Davison's conduct must "shock the conscience." *Students & Parents for Privacy v. United States Dep't of Educ.*, 2016 U.S. Dist. LEXIS 150011, at *95-96. (N.D. Ill. October 18, 2016). "Only 'the most egregious official conduct' will satisfy this stringent inquiry." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (quoting *Cty. of Sacramento*, 523 U.S. at 846); *see also Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) ("Cases abound in which the government action—though thoroughly disapproved of—was found not to shock the conscience.").

Neither party cites to a factually analogous case from the Seventh Circuit, nor has the Court found one. A factually similar case from the Second Circuit held that a teacher slapping a student with no pedagogical or disciplinary justification was not sufficiently brutal or shocking to constitute a due process violation. *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2nd Cir. 2002) (cited in *D.S. v. E. Porter County Sch. Corp.*, 2013 U.S. Dist. LEXIS 61146, at *26 (N.D. Ill. April 29, 2013) (concluding that a teacher laughing and another teacher referring to plaintiff as a chocoholic were not egregious enough to satisfy a due process claim)).

Plaintiffs argue that even if the slap does not shock the conscience, the harm caused does. They cite no case law to support the argument that the amount of harm is relevant to whether the conduct is shocking. Instead, the appropriate focus is on "tort law's spectrum of culpability," which spans degrees of intent, not degrees of harm. *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998). There is no doubt that the conduct here was intentional; however, there is no evidence that the slap was "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair

12

play and decency." *Id*. at 847. "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id*. at 848.

As to their Equal Protection claims, Davison argues that Plaintiffs have not shown that J.M. was treated differently than anyone else because of her gender basis or that Kittle was deprived of her right to direct J.M.'s education. Plaintiffs respond that Davison's continued presence at the school amounted to an interference with Kittle's right to direct J.M.'s education because his presence interfered with J.M.'s scholastic performance. Plaintiffs have not presented any evidence that Davison had contact with J.M. after the incident at issue or that he was on school grounds at any time that he was not authorized to be present to perform his duties for the Duneland Wrestling Club. Kittle has a fundamental right to control J.M.'s education, but that right "does not imply a parent's right to control every aspect of her child's education at a public school." *Thomas Evansville-Vanderburgh School Corp.*, 258 Fed. Appx. 50, 54 (7th Cir. 2007). Plaintiffs have not included case law to support a theory that Kittle had the right to require that Davison be banned from the school, and there is no evidence to show that Davison did anything after the incident at issue to interfere with J.M.'s education.

The conduct of Davison did not violate the Plaintiffs' constitutional rights, so the Court need not move to the next step of the inquiry.

B. State Law Claims

When all the of the claims in a case giving rise to original jurisdiction have been resolved, a district court maintains subject matter jurisdiction over those claims that fall within its supplemental jurisdiction under § 1367(a). *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589

13

F.3d 881, 883 (7th Cir. 2009)). However, § 1367(c) specifically provides that a court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The decision whether to decline jurisdiction is squarely within the Court's discretion. *Miller*, 600 F.3d at 738 (citing *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009)); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). There is a presumption that the district court "will relinquish [that] jurisdiction over any supplemental claim to the state courts." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) (citing cases). In *Wright*, the Seventh Circuit Court of Appeals explained that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point to a federal decision of the state-law claims on the merits." 29 F.3d at 1251. However,

> district courts should exercise the discretion to relinquish jurisdiction over state law claims that remain after the dismissal of federal claims unless any of the following three circumstances exists: (1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided.

*Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008) (citing *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007)); *see also Wright*, 29 F.3d at 1251-52.

Defendants seek to have the remaining causes of action remanded to state court. Plaintiffs have not argued that this Court should retain jurisdiction in the event the federal question is resolved and have therefore waived that argument. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Bonte v. U.S. Bank,*

14

*N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.") (citing *U.S. v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008)).

In the absence of any circumstances sufficient to overcome the presumption, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Therefore, dismissal under 28 U.S.C. § 1367(d) is the proper vehicle for disposing of the remaining counts of the Complaint so that they can be refiled in state court, should Plaintiffs so choose. The period of limitations for the claims asserted in Plaintiffs' Complaint is tolled for the time the claim has been pending and for a period of 30 days after it is dismissed by this Court unless state law allows for a longer tolling period. *See* 28 U.S.C. § 1367(d).

## V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Duneland School Corporation's Motion for Summary Judgment [DE 65], **GRANTS** Defendant Davison's Motion for Summary Judgment [DE 68] and enters summary judgment against Plaintiffs and in favor of both Defendants on Count IX of Plaintiff's Complaint. Pursuant to 28 U.S.C. § 1367(d), the Court hereby **DISMISSES without prejudice** Counts I through VIII of Plaintiff's Complaint as against both Defendants.

SO ORDERED this 13th day of October, 2023.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record